The Fifth and Fourth Amendments prohibit deprivation of life, liberty, or property without due process of law. The Supreme Court cases on judicial disqualifications are guides to ensure fairness because a fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases, but our system of laws has always endeavored to prevent even the probability of unfairness. This is not dicta. Due process requires disqualification whenever the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable. Due process concerns situations other than those related to pecuniary interest, dual roles as prosecutor and judge, acting as a judge in one's own case, or embroilment in a running bitter controversy. The circumstances in this case are unprecedented. Toomey, Murchison, Offit, Lavoie, Ward, Caperton, and Williams concern judges who refuse to disqualify themselves. In my case, Judge O'Neill and the San Diego County bench disqualified themselves because of bias toward me. Sixteen months later, they reinstated themselves to assure my conviction. The district court erroneously decided the two standards set forth in Caperton. In Williams v. Pennsylvania in June 2016, the U.S. Supreme Court summarized Caperton v. Macy as requiring recusal when the likelihood of bias on the part of the judge is too high to be constitutionally tolerable. The court ruled that a prosecutor who had involvement in Williams' case was prohibited from ever acting as a judge in that case. Judge Castile's involvement gave rise to an unacceptable risk of actual bias, which so endangered the appearance of neutrality that his participation in the case must be forbidden if the guarantee of due process is to be implemented. Ms. Freeman, I notice you're here in court arguing. Are you still under a sentence of supervised release? No, that ended in 2010. Do we have jurisdiction of this case? Yes. How? My license is at stake. So that's the collateral consequence, your state bar license? Yes. Okay. What's going on with that? It's awaiting the outcome of this. So what happens if we rule in your favor? I will get my license back. So they've taken it away from you, your state bar law license? Yes. Okay. Are there any other collateral consequences of this conviction? Such as? I don't know what there could be, but I'm just trying to explore whether, because for habeas, there has to be custody. Yes. You have to file it before custody. You have to be in custody or you're suffering some collateral. I had to have filed it before the parole was over, which I did by two days. Okay. And I wouldn't have standing if I weren't an attorney and my license weren't at stake. Okay. That's what I was trying to get at. The court also held... Let me ask you a question about that. You said that you also had standing because you filed this while you still had standing, while you were still under supervised release? Yes. It needed to be filed in federal district court before parole was terminated. And it was. In Williams, the court also held that an unconstitutional failure to recuse constitutes a structural error that is not amenable to harmless error review, citing Bucket versus the United States. The language that due process requires disqualification in exceptional cases with extreme facts comes from Lavoie and Caverton. In Lavoie, Justice Emory had filed two similar lawsuits against other insurance companies and refused to recuse himself. The court said that not every frustration with an insurance company mandates disqualification, but those facts were extreme enough. In Caverton, Don Blankenship spent $3 million to elect Judge Benjamin. Though not every campaign expenditure mandates disqualification, the Supreme Court found $3 million to be a rare occurrence and exceptional enough to require disqualification. The dollar amount was an extreme fact. In your case, the allegations which resulted in the court first recusing itself were found to be false, right? They never had the slightest bit of evidence. It was all conjecture to begin with. And, you know, they never found any evidence. Nor did they find evidence to support the charges. So when the court reinstated itself, it did so on the basis that the grounds for recusing itself were incorrect and false and there was no reason for it to recuse itself. No, they didn't say that exactly. They just reinstated themselves. But there was no longer any reason, was there? Because the reason they recused themselves, the San Diego judges, was because they thought you had done something that you did not do. They can, well, that was, no. They recused themselves because they could not be fair to me because they thought I had done something. But then they discovered that you had not done that at all. But they said, but they still continued to believe that I had done that. Where did they say that? The conditions of my parole, among others, they refused to let me parole back to San Diego County and Judge Elias, the person who they thought I had been, that Fiona Khalil had said I had been stalking, there was a no contact order for him. They never stopped believing that. They reinstated themselves because it was time to hear a motion in which all the charges would be dismissed that they had filed against me. They wouldn't have needed to reinstate themselves if they'd had evidence on those charges either. But they didn't, so they reinstated themselves. Weren't you convicted of stalking? I was convicted of absolutely everything. By jury, right? Yes, but Judge O'Neill, he was a factor in it, and so was my ineffective counsel. The evidence in the trial was different than the evidence they had before. It kind of all shifted and nobody was really speaking up for me, and every time I tried to speak up, I got chewed out. You wanted to save two minutes for rebuttal. Are we there already? Yes, it goes fast. Oh my gosh. You might want to wait to see what the state says. Okay. Good morning, your honors. May it please the court, Christopher Beasley, Deputy Attorney General on behalf of the appellee. Ms. Freeman is absolutely correct that under the Constitution what is required is a fair trial in a fair tribunal before a fair judge, and under the Constitution disqualification is required when there is a probability that is so high that the judge is actually biased that it becomes constitutionally intolerable. Ms. Freeman has cited all of that correctly. And Judge Reinhart, you're absolutely correct that Judge O'Neill here did initially recuse himself on the basis of the allegation that Ms. Freeman had been stalking a fellow judge, but then later they discovered that that allegation proved to be false. There was never any such activity whatsoever. So the original basis for why Judge O'Neill had recused himself was gone, and there is nothing beyond that allegation that supports a conclusion that the probability of him being actually biased was constitutionally intolerable. There's nothing on this record suggesting that Judge O'Neill was biased against Ms. Freeman. In fact, the district court in its findings, it concluded that this judge, Judge O'Neill, was quite fair and had exercised quite a lot of patience in dealing with Ms. Freeman and some of her dilatory tactics at trial. Judge Wardlaw, you asked about jurisdiction, and I do think that in this case there is jurisdiction because Ms. Freeman did file her habeas petition before she was released from custody, and then there is also that collateral consequence of her attorney license. So I do think that this court continues to maintain jurisdiction. And Judge Wardlaw, you also made the observation that Ms. Freeman was indeed convicted by a jury. Now, Ms. Freeman suggests that the jury was ultimately tainted, that the jury verdict was ultimately tainted by Judge O'Neill, but she points to nothing in the record, no rulings, no evidentiary rulings, nothing that would suggest that Judge O'Neill tried to sway the jury in any way, shape, or form. Because if he was not constitutionally entitled to preside, that would be all that would be needed. That's correct. If Judge O'Neill were constitutionally disqualified, that would result in a structural error and reversal would be required. But because constitutional disqualification was not required here, there is no reason for this court to reverse, and ultimately the disposition should be that the district court decision be affirmed on appeal. So there's no question, though, that this was a violation of state law? You're absolutely correct, Judge Wardlaw. This was an unfortunate mistake made by the trial courts, by the state courts. Under the state's disqualification statutes, Judge O'Neill should never have gone back and been reinstated. But ultimately, the judicial disqualification statutes that states impose, they don't define the due process requirements. The Supreme Court has said, in Caperton most recently, and also reiterated in Williams, that the states and the judicial ethics canons can build upon the protections that are afforded by the Constitution, by adding additional layers of protection, which is what California has done. Unfortunately here, the state did fail to follow its own requirements. But that issue ultimately was procedurally defaulted because there was not then the additional follow-through with the remedies under the state. So I understand the waiver argument. But was it waived before the Supreme Court, too? I mean, the California courts, too? Yes. OK. All right. And so even though there was that state law violation, that does not mean that there was also a constitutional violation. And additionally, state law procedural violations don't really inform the fundamental question, which is, was this judge biased against Ms. Freeman? Just because there was a violation of state procedural rules does not tell us that Judge O'Neill was actually biased against her. Nor does it suggest that there was a probability of bias that was constitutionally intolerable. And so ultimately, there was no constitutional deprivation here. And this Court, we would ask respectfully, should affirm the judgment of the district court and deny the writ. If there are no further questions by this court, the state would submit. Thank you, counsel. Thank you, Your Honors. Ms. Freeman? Judge O'Neill did not recuse himself because he thought charges would be filed against me concert with Judge Elias as the victim. He recused himself because I asked him to reduce my bail. And he said he could not be fair to me and reduce my bail because he thought that to help me get out might endanger his good friend, Judge Elias. He said nothing about charges being filed against me. It was just because he feared for the safety of his friend. Can you point to things in the trial that happened that would be evidence of actual bias in this case? Any time he had to say something favorable to my side, he said it in a very low, monotone, that the jury could not pay attention to or really believe in here. When I was testifying on my own behalf, he interrupted me and criticized me. And his total attitude towards me the entire time was very critical and demeaning and dismissive. So you were represented by counsel, however. I was. Who didn't do anything unless Judge O'Neill nodded to do it. He was very elderly at the time. But he was still sharp. When I had a list of motions, Judge O'Neill would say, did you join in this motion? And then Judge O'Neill would shake his head like this and Apgar would do what he said. It was very strange. He ruled against all of my motions, even when I had retained counsel there and I wanted to exchange appointed counsel for a retained counsel, which I had an absolute right to do under the Constitution and in case law. He raised my bail from $75,000 to $500,000 because some misdemeanors were going to be filed that then were dismissed. And then when I bailed out at $500,000, he raised it to a million and said, will that keep you in now? I could tell his whole attitude towards me was biased. It may not be reflecting the record, which is why it's not required. Well, you have to demonstrate prejudice. I would be happy to brief that if you would like. We'll think about that. I believe I've said it many times, but if it's not in the current brief because you were focusing on the due process, I can certainly get it quickly. We'll let you know if we need any further briefing. We'll review the current briefs and then we'll see if there's anything further required. Okay. But due process does require a fair and impartial judge, one who's not... And the reason that there's never been a case like this is because it's so obvious to everyone that once they recuse themselves, they're never to come back to a case. That would just, if not being actual bias, the appearance of bias and impropriety. Thank you. Thank you. Thank you. Thank you both very much. The case is adjourned. You will be submitted.
judges: Pregerson, Reinhardt, Wardlaw